UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CHAMBLISS,

    Plaintiff,

Case No. 13-cv-13550

v.

HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                 /

**ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (document no. 11) **AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** (document no. 9)

    The Social Security Administration ("SSA") denied plaintiff and claimant Michael Chambliss' application for disability insurance benefits ("DIB") in a decision issued by Administrative Law Judge ("ALJ") Earl A. Witten on April 19, 2012. After the SSA Appeals Council declined to review the decision, Chambliss appealed to this Court. Before the Court are the parties' cross-motions for summary judgment. The Court, having reviewed the motions, concludes that a hearing is not necessary to resolve them. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court will grant the Commissioner of Social Security's ("Commissioner") motion, deny Chambliss' motion, and dismiss the case.

**BACKGROUND**

I.    The Application and Procedural Posture

    Michael Chambliss was 48 years old at the time of his application for disability benefits, in which he alleged disability beginning on September 1, 2010. Administrative Record ("A.R.") at 115-16, ECF No. 6. He claimed disability based on injuries to his legs and issues with blood pressure. A.R. at 52. The Commissioner initially denied his claim on

June 17, 2011. A.R. at 20. Chambliss then requested an administrative hearing, and, on April 5, 2012 he appeared with counsel before ALJ Witten. A.R. at 31-51. A vocational expert, Dr. Norman Ables, also testified. *See id.* On April 19, 2012, ALJ Witten issued a final report denying Chambliss' application for benefits. A.R. at 20-27. The Social Security Appeals Council then denied Chambliss' request for review. A.R. at 1-6.

II.  The Medical Evidence

Chambliss has a history of bilateral knee problems and began treatment with treating orthopedic surgeon Dr. John Sauchak in 2008. A.R. at 267. In April 2009, Dr. Sauchak performed surgery to correct a torn meniscus in Chambliss' left knee. A.R. at 263-64. The next month, during a re-evaluation, Dr. Sauchak noted that Chambliss had an effusion, but was doing reasonably well and had reasonably good motion in his left knee. A.R. at 265. Dr. Sauchak recommended Aleve and exercise. *Id.* At another visit in June 2009, Dr. Sauchak noted that Chambliss was doing better, that his motion improved, and that his pain and swelling were controlled. A.R. at 266. Dr. Sauchak adjusted Chambliss' knee brace, provided samples of Celebrex, an anti-inflammatory medication, and recommended Hylagan, a drug used for osteoarthritis. *Id.*

In a February 2010 letter, Dr. Sauchak noted that, during the 2009 surgery, he discovered meniscal pathology and Grade IV chondromalacia in the lateral compartment of the knee. A.R. at 267. He opined that, since Chambliss had similar problems in his right knee, he suspected similar pathology. *Id.* As a result, Dr. Sauchak stated that in his medical opinion Chambliss was very limited in his ability to perform weight-bearing activities and has permanent limitations of no prolonged walking or standing, limited climbing, and no kneeling or squatting. *Id.*

In June 2010, neurologist Dr. Elaine Kountanis examined Chambliss for the Michigan Department of Disability Services ("DDS"). A.R. at 177-79. Chambliss reported knee pain in both knees but worse in the right one. A.R. at 177. Medication did not relieve the right knee pain. *Id.* He stated that he wore a hinged brace on his left knee so that he could do temporary work in a factory. *Id.* He noted that he had to sit down after standing for an hour and developed an edema from his brace in his left leg. *Id.* Dr. Kountanis determined that Chambliss had a left knee edema, pain on palpitation of the medial joint line and on patella compression, atrophy of the left leg due to poor weight bearing, an inability to squat with his knee brace, and a left leg limp. A.R. at 178. She opined that Chambliss had valid pain with standing and walking more than an hour and should avoid repetitive squatting and stair climbing. A.R. at 179. Bilateral knee x-rays were normal. A.R. at 181.

In September 2010, Dr. Clifford Buchman evaluated Chambliss to provide a second opinion regarding his knee conditions. A.R. at 210-15. Chambliss told Dr. Buchman that Dr. Sauchak had released him back to work with restrictions and the brace in September 2010. A.R. at 210. Chambliss complained of knee pain, swelling and buckling, especially in the left knee. A.R. at 211. The buckling decreased with the brace. *Id.* He reported inabilities to kneel, squat, or stand for over an hour or two, to walk or drive for more than short distances, to climb ramps and stairs without difficulty, and to walk on uneven surfaces. *Id.* Dr. Buchman found that Chambliss walked with a slight limp favoring his left leg and exhibited significant pes planus and calcaneal valgus, which are flat feet. A.R. at 212. In his right knee, Chambliss had minimal effusion, patellar grinding, and positive results in Apley's and McMurray's tests for meniscus problems. *Id.* In his left knee, he had effusion, pain to palpation, grinding, crepitus, and positive Apley's and patellar grind tests. *Id.* Dr.

Buchman diagnosed status-post left knee surgery with chondromalacia and internal derangement, internal derangement of the right knee with a probable torn meniscus and chondromalacia patella, and continued pain, swelling, and instability of the left knee. A.R. at 213. He stated that the right knee would require surgery at some point. *Id.* Dr. Buchman opined that Chambliss had limitations including limited climbing of ramps and stairs, limited walking on uneven surfaces, no climbing ladders, limited squatting or kneeling, and limited standing and walking. A.R. at 214.

Later that month, Chambliss returned to Dr. Sauchak, reporting knee pain but stating that his brace was effective. A.R. at 230. Chambliss had mild valgus alignment and a bilateral knee x-ray showed left knee joint space narrowing. *Id.* Dr. Sauchak injected Chambliss' left knee with Synvisc, which is a substance similar to Hyalgan. *Id.*

In an October 2010 visit, Dr. Buchman noted similar abnormalities as those that existed at the time of the last examination. A.R. at 212. He diagnosed degenerative bilateral knee osteoarthritis, which was more symptomatic on the left knee. A.R. at 209. He gave Chambliss restrictions for three months of no climbing ladders, limited climbing of stairs, and minimal kneeling, squatting, standing, and walking. *Id.*

Chambliss visited Dr. Sauchak in November 2010, reporting that his left knee was doing reasonably well and that his brace was very helpful, but his right knee was acting up. A.R. at 229. Chambliss had joint tenderness and Dr. Sauchuk injected a corticosteroid and anesthetic into the right knee. *Id.*

A December 2010 right knee magnetic resonance image ("MRI") of the right knee showed fraying or degeneration of the lateral meniscus but no well-defined tear, early degenerative changes, and a small amount of joint fluid. A.R. at 269-70.

4

That same month, Chambliss returned to Dr. Buchman, complaining of pain, swelling, grinding, and buckling in both knees, with worse pain in the right knee. A.R. at 206. He reported that the prior month's injection did not provide him significant relief. *Id.* Chambliss had full extension of both knees with pain and crepitus, stable knees, and a satisfactory gait pattern. A.R. at 207. He was able to get onto and off the examining table. *Id.* Dr. Buchman diagnosed internal derangement of the left knee following surgery and degenerative osteoarthtitis, which was worse in his left knee. *Id.* He limited Chambliss for three months to climbing stair climbing, no ladder climbing, minimal kneeling and squatting, and minimal standing and walking. *Id.* at 207.

In January 2011, Chambliss reported to Dr. Sauchak with bilateral knee pain and occasional left knee swelling. A.R. at 271. He stated that an injection of the right knee had not helped and that he had bilateral leg spasms. *Id.* Chambliss had good ranges of knee motion. *Id.* An x-ray of Chambliss' lumbar spine showed minor degenerative changes and possible spondylisthesis. A.R. at 273. Dr. Sauchak ordered a lumbar spine MRI. A.R. at 271.

In February 2011, Chambliss returned to Dr. Buchman with complaints of pain in his left knee, spasms, leg numbness, occasional swelling, buckling, locking, and grinding. A.R. at 236. The examination findings were similar to those in prior visits. A.R. at 237. Dr. Buchman ruled out low back pain with possible disc disease and continued the same limitations. *Id.* He then reviewed a January 24, 2011 MRI of Chambliss' lumbar spine, noting facet changes at L4-5 an L5-S1 with no significant central stenosis or neural foraminal compromise. A.R. at 238.

5

In April 2011, Chambliss saw Dr. Sauchak, during which visit he displayed good ranges of knee motion and equivocal meniscus signs. A.R. at 223. Dr. Sauchak provided an injection of a corticosteriod and an anesthetic. *Id.* He opined that Chambliss had permanent limitations in standing and walking. *Id.*

In October 2011, Chambliss visited Dr. Buchman. A.R. at 232. He reported that he had returned to work in March 2011 using an elastic knee brace, but he was only able to work three days. *Id.* Chambliss stated that he needed to use a rigid brace, but was not allowed to do so at the factory where he worked. *Id.* Chambliss walked with a slight limp without the brace, but walked better with it. A.R. at 234. Dr. Buchman noted that the examination was negative regarding the right leg. *Id.* Chambliss' left knee had similar abnormalities as those Dr. Buchman observed earlier. *Id.* Dr. Buchman found that Chambliss had continued pain, swelling, and instability in his left knee, status-post left knee surgery with chondromalacia and internal derangement, degenerative changes in the lateral compartment of the left knee, and internal right knee derangement with a probable torn meniscus and chondromalacia. *Id.* Dr. Buchman made no changes to his recommended limitations. A.R. at 235.[1]

III. The Hearing Testimony

Chambliss testified that he had bilateral knee pain with spasms that woke him up at night. A.R. at 35. He stated that he could walk for one block, stand for up to 20 minutes, sit

---

[1] Chambliss presented medical records to the Appeals Council after the ALJ's decision. Although this evidence is in the record, it is irrelevant. "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

for 15 minutes, and drive with difficulty, using both feet. A.R. at 36-37. He stated that he could not recover from squatting unassisted and had difficulty using stairs. A.R. at 38-39. He testified that he had spine problems that made it difficult to lift things. A.R. at 39-40. He also testified that he did not drive at night at all because of vision problems. A.R. at 40.

In the past, Chambliss primarily did production assembly work at various factories. A.R. at 44. He also worked as a security guard. A.R. at 46-47. ALJ Witten asked the vocational expert a hypothetical question about what work could be performed by a person with Chambliss' vocational profile who had the limitations of lifting 20 pounds occasionally and 10 pounds frequently, standing and walking two hours per day but not continuously, sitting six hours per day but not continuously, no foot controls or work around dangerous machinery, occasional bending, twisting, and turning, and no squatting, kneeling, or climbing. A.R. at 48. The vocational expert testified that such a person could work as a machine operator, assembler, bench handworker, ticket seller, surveillance system monitor, order clerk, and charge account clerk, for which there were a total of 19,500 positions in the region. A.R. at 49. He further testified that, if Chambliss' testimony regarding his pain, discomfort, and limitations were fully credited, an individual with such symptoms would not be able to perform the jobs cited. A.R. at 49-50. In addition, the vocational expert stated that being forced off task more than 10 percent of the day or taking off more than two days a month because of the impairments would be work preclusive. A.R. at 50.

IV.  The ALJ's Decision

When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 683 (6th Cir. 1992). In reviewing an application, an ALJ must examine the evidence using the five-

step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The "claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Here, the ALJ found that Chambliss had not engaged in any substantial gainful activity since September 10, 2010, the alleged onset date. A.R. at 22.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Here, the ALJ found that Chambliss suffered from three severe impairments: degenerative joint disease of the bilateral knees; hypertension; and degenerative disc disease. A.R. at 22.

Third, the ALJ must determine whether the claimant can prove the impairment "meets or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. § 404.1520(d). Here, the ALJ found that Chambliss' impairments, whether individually or combined, did not meet or equal the criteria for any listing. A.R. at 23.

Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show he cannot engage in work he has performed in the past. In

making this determination, the ALJ will consider all the relevant evidence. The ALJ must first conclude there is an underlying medical impairment capable of producing the claimant's symptoms, and then make a judgment as to the intensity and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e).

The ALJ concluded that Chambliss had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: lifting or carrying a maximum of 20 pounds occasionally and 10 pounds frequently; sitting for up to six hours but not continuously in an eight hour work day; standing or walking for up to two hours but not continuously in an eight hour work day; no foot controls; occasional bending, twisting, or turning; no climbing, crawling, squatting, or kneeling; and no work around unprotected machinery or at any height. A.R. at 23.

The ALJ also made a finding on the credibility of Chambliss' statements about his pain and symptoms based on a consideration of the entire case record because he concluded that they were not substantiated by objective medical evidence. A.R. at 24. The ALJ concluded that Chambliss' medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that his statements concerning their intensity, persistence, and limiting effects were not credible to the extent that they were inconsistent with the residual functional capacity assessment. *Id.*

The ALJ first rejected Chambliss' testimony that he urinates once per hour as irrelevant since it was not reported on his application. *Id.* He also ignored his testimony that he is unable to drive at night as unsupported by the medical evidence. *Id.*

The ALJ adopted Dr. Sauchak's opinion that Chambliss had a permanent limitation of no prolonged walking or standing, limited climbing, and no kneeling or squatting as supported by the record and gave it controlling weight. *Id.* He also adopted Dr. Kountanis' opinion that Chambliss could not stand or walk for more than an hour and that he should avoid squatting and climbing steps on a repetitive basis, *Id.* In addition, the ALJ adopted Dr. Buchman's restrictions of limited stairs, limited climbing, limited kneeling, limited squatting, limited standing, limited walking, and no ladders. *Id.* Furthermore, he gave Dr. Buchman's opinion controlling weight and included it in the residual functional capacity. *Id.*

The ALJ then pointed to unremarkable bone scans and x-rays and medical examinations showing a good range of motion. A.R. at 25. He also noted Chambliss' lack of complaints in the record and noted his ability to do various tasks during his treatment as well as his lack of emergency treatments. *Id.*

Fifth, the ALJ must determine, based on the residual function capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). The ALJ found that Chambliss could not perform his past relevant work as a tire and wheel assembler, automobile seat assembler, or security guard because those jobs required lifting more than 20 pounds, standing or walking for more than two hours, and possibly more than occasional bending, twisting, or turning. *Id.* He also noted that Chambliss had a high school education. *Id.* Considering Chambliss' age, education, work experience, and residual functional capacity along with the testimony of the vocational expert, the ALJ found that Chambliss was qualified to work as machine operator, assembler, bench handler, small parts assembler, order clerk, or charge account clerk, titles for which collectively thousands of

jobs existed in the State of Michigan, and that he was also capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A.R. at 26. The ALJ then concluded that Chambliss was "not disabled" as defined by the Social Security Act. *Id.*

## STANDARD OF REVIEW

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g). A reviewing court only examines an ALJ's determination to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Therefore, a review of the Commissioner's decision gives great deference to an ALJ's findings. A court should not replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## DISCUSSION

The Court agrees with the Commissioner that Chambliss' brief is so full of boilerplate language that it is difficult to discern what his argument actually is. Chambliss presents pages upon pages of legal standards for Social Security cases but only a handful of

11

sentences about his own case. The Court further concurs with the Commissioner that, although Chambliss appears to frame his argument around an inaccurate hypothetical that the ALJ gave to the vocational expert that did not accurately portray Chambliss' impairments, he really takes issue with the ALJ's credibility finding.

"[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The ALJ developed his residual functional capacity finding in great part based directly on the opinions of treating physicians Dr. Sauchak and Dr. Buchman. Medical opinions from treating sources may be given significant, or even controlling, weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2);[2] *Cutlip*, 25 F.3d at 297. The ALJ properly gave controlling weight to Dr. Sauchak's and Dr. Buchman's opinions.

Chambliss received extensive treatment from Dr. Sauchak and Dr. Buchman for his orthopedic conditions. Those doctors' opinions were consistent with each other. Dr. Sauchak determined that Chambliss was very limited in his ability to perform weight-bearing activities and had a permanent limitations of no prolonged walking or standing, limited climbing, and no kneeling or squatting. A.R. at 267. Dr. Buchman gave Chambliss the limitations of limited climbing of ramps and stairs, limited walking on uneven surfaces, no climbing ladders, limited kneeling or squatting, limited standing, and limited walking. *See*

---

[2] The regulation that was in effect at the time of the ALJ's decision. It has since been renumbered as 20 C.F.R. § 404.1527(c)(2).

12

A.R. at 207, 209, 214, 235, 237. These limitations are directly reflected in the residual functional capacity assessment made by the ALJ. The ALJ limited Chambliss to standing and walking two hours per day, but not continuously as well as no squatting, kneeling, or climbing.

The ALJ also properly adopted the opinion of Dr. Kountanis, who examined Chambliss for the state DDS. In evaluating an opinion from a non-treating medical source, the ALJ considers the supportability and consistency of the opinion, the specialization of the medical source, and any other factors raised by the claimant or others. 20 C.F.R. § 404.1527(d)(3)-(6). In his residual functional capacity finding, the ALJ accounted for Dr. Kountanis' limitations of no standing or walking for more than an hour, repetitive squatting, and no stair climbing. A.R. at 179.

Accordingly, the ALJ's residual functional capacity finding is based on the medical evidence in the record and thus supported by substantial evidence.

In light of the medical evidence in the record, the ALJ was justified in rejecting Chambliss' allegations of more significant limitations. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Although Chambliss points to his subjective complaints, he does not explain why they merit more restrictive functional limitations than those recommended by his physicians and ultimately adopted by the ALJ. As a result, his argument has no merit.

Based on this credibility determination and on the objective medical evidence in the record, the ALJ's hypothetical was also appropriate. Generally, the limitations found by an ALJ should be reflected in the hypothetical posed to the vocational expert. *Bohn-Morton*

*v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) ("[A]n ALJ's hypothetical questioning must 'accurately set[] forth the plaintiff's physical and mental impairments.'") (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)); *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "[T]he ALJ can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. "An improper hypothetical question cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 931 (E.D. Mich. 2005).

Chambliss makes the conclusory statement that the hypothetical did not accurately describe him "in all significant, relevant respects," but does not explain how that is so based on substantial evidence in the record, particularly the medical evidence.[3] The hypothetical at bar was appropriately based on the medical evidence and the ALJ's credibility determination.

## CONCLUSION

Substantial evidence supports the ALJ's residual functional capacity finding, including his credibility determination, and the hypothetical provided to the vocational expert. The Court will not overturn the ALJ's findings, and, therefore, will deny Chambliss' motion for summary judgment, and grant the Commissioner's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Chambliss' motion for summary judgment (document no. 9) is **DENIED.**

---

[3] Again, Chambliss raises that he had frequent urination as an impairment, but does not explain how the condition was relevant to his disability application.

14

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (document no. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

                        s/Stephen J. Murphy, III
                        STEPHEN J. MURPHY, III
                        United States District Judge

Dated: May 22, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 22, 2014, by electronic and/or ordinary mail.

                        s/Carol Cohron
                        Case Manager